**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Michael Nottke, et al.,                                Case No. 3:17CV544

         Plaintiffs

         v.                                                    **ORDER**

Norfolk Southern Railway Co.,

         Defendant

        This nuisance case arises out of defendant Norfolk Southern Railway Company's operations at its Moorman Yard in Bellevue, Ohio.

        Plaintiffs, whose homes are adjacent to the yard, allege that Norfolk Southern's use of a retarder system to decelerate rail cars generates "extreme noise pollution." They contend that the retarders produce "a very loud, unbearable high-pitched squealing sound" when the retarders' metal brake shoes press against the cars' steel wheels. (Doc. 30 at ¶10). Among the relief plaintiffs seek is an injunction "enjoining Defendant from emitting active retarder noise at levels . . . at or above" 83 decibels, the level at which federal law caps permissible noise emissions from retarders. *See* 40 C.F.R. § 201.14.

        Jurisdiction is proper under 28 U.S.C. § 1332(a)(1).

        Pending is Norfolk Southern's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the request for injunctive relief. (Doc. 35).

        For the following reasons, I grant the motion.

**Standard of Review**

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Discussion**

Norfolk Southern argues that the Interstate Commerce Commission Termination Act (the Termination Act or ICCTA), 49 U.S.C. § 10101, *et seq.*, preempts plaintiffs' request for injunctive relief.

According to the railroad, the proposed injunction would require it "to alter its rail operations at the Moorman Yard," whether by installing noise-dampening pads on the retarders or erecting sound barriers somewhere on the yard. (Doc. 36 at 11). Because such an injunction would have the effect of managing its operations, Norfolk Southern contends that the Termination Act categorically preempts the request for injunctive relief. (*Id.*).

Plaintiffs respond that the categorical-preemption analysis does not apply because the proposed injunction would not "intrude on the regulation of railroad operations[.]" (Doc. 38 at 5). Rather, plaintiffs contend that their request is subject to an as-applied preemption analysis, under which the injunctive relief would be permissible unless it "unreasonably interfere[d] with railroad transportation." (*Id.*). Because the injunction that plaintiffs seek is only "incidental to railroading," plaintiffs contend that the Termination Act does not preempt it. (*Id.* at 10).

## A. Preemption under the Termination Act

"The Termination Act established the Surface Transportation Board ('STB') and gave the STB exclusive jurisdiction over certain aspects of railroad transportation." *Adrian & Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (internal citation omitted).

The statute defines "transportation" broadly to include "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail," and, as well, "services related to that movement." 49 U.S.C. § 10102(9)(A) & (B).

Under the Termination Act, the remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).

The Sixth Circuit has read this language as "preempting all state laws that may reasonably be said to have the effect of managing or governing rail transportation[.]" *Adrian & Blissfield R.R. Co.*, *supra*, 550 F.3d at 559. State laws, in this context, include state-law tort suits: "Allowing [a] plaintiff to obtain a monetary or injunctive remedy by application of the state's nuisance law to [a railroad's] actions is not significantly different from allowing the state to impose restrictions on [the railroad] through laws and regulation." *Suchon v. Wis. Cent. Ltd.*, 2005 WL 568057, *4 (W.D. Wis. 2005).

At the same time, "all of the circuits have concluded that [the Termination Act] does not encompass everything touching on railroads." *Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 18 (D.C. Cir. 2017) (internal quotation marks omitted). Rather, states and localities may apply to railroads generally applicable state laws and regulations "having a more remote and incidental effect on rail transportation." *Adrian & Blissfield R.R. Co.*, *supra*, 550 F.3d at 539.

The preemption analysis under the Termination Act thus "distinguishes between two types of preempted state actions or regulations":

> First, state actions are categorically or facially preempted where they would directly conflict with exclusive federal regulation of railroads. Courts and the STB have recognized two broad categories of state and local actions that are categorically preempted regardless of the context of the action: (1) any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized and (2) state or local regulation of matters directly regulated by the Board – such as the construction, operation, and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and services.
>
> * * *
>
> Second, those state actions that do not fall into one of these categories may be preempted as applied: For state or local actions that are not facially preempted, the section 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation.

*Id.* at 540 (internal citations, quotation marks, and emphasis omitted).

In this case, the injunction at issue is a form of regulation with "the effect of managing or governing rail transportation" that the Termination Act categorically preempts. *Id.* at 559.

The STB's exclusive jurisdiction over "rail transportation" extends to a "yard" and "equipment of any kind related to the movement of passengers or property, or both, by rail[.]" 49 U.S.C. § 10102(9)(A). And the allegations in plaintiffs' complaint establish that the injunction would effectively regulate defendant's operations of a rail "yard" (the Moorman Yard) and, as well, "equipment" related to movement by rail that is in place at the yard (the retarders).

According to plaintiffs, the retarders at the Moorman Yard are a critical component of Norfolk Southern's operations. In 2015, Norfolk Southern invested $160,000,000 to "double" the Moorman Yard's "daily sorting capacity from 1,8000 freight cars to 3,6000." (Doc. 30 at 3, ¶8). As part of the expansion, Norfolk Southern "installed the new retarders" that are the object of

4

plaintiffs' suit. (*Id.*). Plaintiffs allege that the retarders are in use "24 hours a day, nearly every day of the year." (*Id.* at ¶10).

The requested injunction would therefore "manage" or "govern" Norfolk Southern's use of retarders at the Moorman Yard by requiring Norfolk Southern either to implement another means of decelerating trains or to install noise-reducing technology to ameliorate the noise levels the retarders currently generate. For that reason, the Termination Act categorically preempts their request, and I cannot engage in the "as-applied" analysis under which, plaintiffs contend, their proposed injunction would not unreasonably interfere with railroad operations.

My conclusion is consistent with three cases where federal courts have held that the Termination Act categorically preempted a nuisance suit targeting railroad-related noise pollution.

In *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1068 (11th Cir. 2010), a railroad built a side track that abutted the plaintiffs' real property. Plaintiffs brought a nuisance suit under Georgia law, alleging that "the operation of the side track caused an increase in noise and smoke due to the traffic on the track[.]" *Id.* The Eleventh Circuit held that, because the suit focused on the operation of the side track – something within the STB's exclusive jurisdiction – federal law preempted it. *Id.* at 1170

The plaintiffs in *Rushing v. Kansas City S. Ry. Co.*, 194 F. Supp. 2d 493, 500 (S.D. Miss. 2001), tried to use a nuisance suit "to enjoin [a railroad] from operating its switch yard in a manner which causes the levels of noises emanating therefrom to exceed permissible levels." Applying the Termination Act, the district court held that, "to the extent the Plaintiffs seek to use state law to control noise production by regulating the manner in which the Defendant operates

5

its switch yard . . . by requiring that the Defendant employ different techniques when braking its trains . . . the state law has been preempted by" the Termination Act. *Id.* at 501.

Finally, the nuisance and negligence claims in *Price v. Union Pac. R.R. Co.*, 2006 WL 8435106, *1 (M.D. La. 2006), alleged that, while the defendant railroad's cars were stationary, "they produced a constant, loud and irritating noise, ranging from 87 to 150 decibels, which was in violation of [a local] ordinance restricting noise levels to 75 decibels and below."

Like the courts in *Pace*, *supra*, and *Rushing*, *supra*, the district court in *Price* held that the Termination Act preempted the nuisance claims. This was so, the court explained, because:

> plaintiffs' claims, which relate to Union Pacific's alleged negligent operation of its refrigerated rail cars . . . appear to fall within the exclusive scope of the ICCTA. To allow the plaintiffs to recover monetary damages under Louisiana's negligence and nuisance laws is similar to allowing the state to impose regulations on Union Pacific, which is impermissible under the ICCTA, and plaintiffs' claims are therefore preempted by federal law.

*Id.* at *4.

Because the object of plaintiffs' proposed injunctive relief is the noise that the retarders at the Moorman Yard generate, and because the STB has exclusive jurisdiction over both the "yard" and all "equipment" related to railroad operations, 49 U.S.C. § 10102(9)(A), the Termination Act categorically preempts the request for injunctive relief.

### B. Effect of the Noise Control Act

The Noise Control Act sets maximum noise emissions from rail cars engaged in interstate commerce. 42 U.S.C. § 4916. It also forbids any state or local regulation of noise emissions that are inconsistent with – i.e., more stringent than – the federal standards. As relevant to this case, federal law permits rail carriers "to operate retarders as long as noise levels do not exceed 'an adjusted average maximum A-weighted sound level of 83 [decibels]." *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 864 (N.D. Ohio 2017).

Plaintiffs insist that, in requesting an injunction, they are merely "seek[ing] enforcement" of the 83-decibel cap. (Doc. 38 at 8). They also contend that I can "harmonize both the ICCTA and the Noise Control Act by permitting the Plaintiffs to proceed with a request for injunctive relief[.]" (*Id.* at 10).

For the reasons just given, however, the Termination Act does not permit plaintiffs to obtain the injunction they seek.

Nor does the Noise Control Act entitle plaintiffs to such an injunction.

That statute limits states' power to impose stricter noise-control regulations on rail carriers than what federal law imposes. It is in no way an affirmative grant of power to the states to regulate rail carriers. As such, there is no true conflict between the statutes, and the Noise Control Act does not, of its own force, authorize the injunctive relief plaintiffs seek (indeed, plaintiffs do not so contend).

Finally, even if there were an apparent conflict between the statutes, it would be possible to harmonize them by permitting plaintiffs to sue for money damages flowing from the noise pollution that exceeds the 83-decibel cap, but denying them the power to manage or govern, via an injunction, rail operations at the Moorman Yard.

## Conclusion

It is, therefore

ORDERED THAT defendant's partial motion to dismiss (Doc. 35) be, and the same hereby is, granted with prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge